IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-7123 |
| ) | |
| MILES E. BURRIS, IV, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This misdemeanor case was tried to the court, sitting without a jury, at Fort Leavenworth, Kansas, on September 12, 2007. The government appeared through U.S. Army Cpt. Anna L. Speas, serving as Special Assistant U.S. Attorney. The defendant, Miles E. Burris, IV, appeared in person and through Assistant Federal Public Defender Melody Evans.

At the close of evidence, because of certain legal issues that were perceived to be pivotal, the undersigned U.S. Magistrate Judge, James P. O'Hara, asked the parties to submit proposed findings of fact and conclusions of law, which the court has reviewed (*see* docs. 8-11). This order constitutes the court's findings of fact and conclusions of law, as contemplated by Fed. R. Crim. P. 23(c). For the reasons explained below, defendant must be acquitted of the charge of violating 18 U.S.C. § 1382 (re-entering a military installation after having been barred).

The material facts, with one fairly minor exception, are largely uncontroverted. On December 16, 2004, defendant was arrested on Fort Leavenworth for shoplifting and possession of marijuana.[1] On January 24, 2005, Lt. Gen. William S. Wallace, then the commanding general of Fort Leavenworth, sent a letter to "Miles E. Burris," at 1112 Spruce Street in Leavenworth, Kansas, informing him that he was "not to enter, remain upon, engage in activities upon or be found within the limits of the United States Military Reservation of Fort Leavenworth." The letter further stated that disobedience of the bar order would subject Mr. Burris to immediate arrest or detention and prosecution for violation of 18 U.S.C. § 1382. The letter stated the bar was permanent and could only be revoked or modified in writing by the commander.[2]

As indicated above, the bar letter was addressed to "Miles E. Burris" and it was sent by certified mail. The mail receipt card was filled out with "Miles Burris" as the addressee, and the receipt was signed for by "Miles Burris."[3] But significantly, the full name of the defendant in this case is Miles E. Burris, IV.

The legal (i.e., platted) property line boundaries of Fort Leavenworth are, understandably, not demarcated on the actual property, meaning there is no fence or sign that notifies a person of the *precise* point at which one has entered Fort Leavenworth. As is typical for most non-military real estate, after crossing the Fort Leavenworth property line,

---

[1] *See* Pl. Ex. 2 (bar letter).

[2] *Id.*

[3] *See* Pl. Ex. 3 (mail receipt).

one has to travel a short distance before reaching any sign, architectural marker, fence, or gate.

Some military installations are open to the public. But Fort Leavenworth is a secured, restricted-access base. At Fort Leavenworth, for both the main entrance (known as the Grant Gate), as well as the Hancock Gate which was used by defendant on May 30, 2007, after crossing the legal boundary one travels on a roadway for some distance, marked by signs and other architectural markings, before reaching a controlled (i.e., manned) access check point.[4] There are turnaround lanes before motorists reach these check points. The check points have guard booths, where identification checks and vehicle searches are performed.

Defendant drove a delivery truck into Fort Leavenworth on May 30, 2007. After crossing the property line, defendant passed through an open metal gate attached to stone architectural markers prior to the Hancock Avenue check point.[5] He then passed several signs posted along the road approaching the manned access check point.[6] One of these signs states: "Access Control Check Point Ahead." Another stated: "Warning, US Army Installation, Persons and vehicles are subject to search upon entry into and exit from Ft. Leavenworth and while within the boundaries of the military reservation."

Defendant was stopped at the Hancock Gate check point and, upon request, properly identified himself. After investigating, officers informed defendant he was barred from the

---

[4] *See* Pl. Ex. 1 (map of Fort Leavenworth).

[5] *See* Def. Ex. 1 (photograph).

[6] *See* Def. Exs. 2 and 3 (photographs).

post. Although certainly not conceded by the government, there was evidence at trial that indicated defendant expressed mild surprise when informed by the officer at the check point that he had been barred. In any event, defendant was given a copy of the bar letter and issued a notice (i.e., a "ticket") charging him with violation of 18 U.S.C. § 1382.

On June 29, 2007, defendant was formally charged in an information filed by the government's attorney with re-entering onto the Fort Leavenworth military installation, after being ordered not to, in violation of § 1382. This statute, at least in relevant part, states:

> Whoever reenters or is found within any such reservation, post, fort, arsenal, yard, station, or installation, after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof . . . [s]hall be fined under this title or imprisoned not more than six months, or both.[7]

This part of § 1382 "involves a second invasion of the premises and one where the accused, because of his prior physical removal or the formal order, is definitely aware that re-entry is prohibited."[8] Therefore, the government must prove "the defendant was forbidden to enter upon the installation by an officer or a person in charge or command of it and that thereafter, knowingly and fully aware of such prohibition, he did so enter."[9]

Of course, the government must prove all the essential elements of the alleged crime beyond a reasonable doubt, which simply is proof that leaves [the trier of fact] firmly

---

[7] 18 U.S.C. § 1382.

[8] *United States v. Ramirez Seijo*, 281 F. Supp. 708, 710 (D.P.R. 1968) (*quoting Holdridge v. United States*, 282 F.2d 302, 308-09 (8th Cir. 1960)).

[9] *See id.* at 711.

convinced of the defendant's guilt."[10] As earlier indicated, it is uncontroverted that, after defendant was apprehended on Fort Leavenworth on December 16, 2004, the commanding general at least tried to send a letter to defendant informing him that he was ordered not to re-enter Fort Leavenworth. However, only if defendant actually *received* the letter before reentering on May 30, 2007, was he legally forbidden to re-enter the installation.[11]

Here, the beyond-a-reasonable-doubt standard of proof is case-dispositive. Although a close call, the court finds the government has *not* proven beyond a reasonable doubt that defendant ever received General Wallace's bar letter. The certified mail receipt for the bar letter was signed by "Miles Burris," who may or may not be defendant, Miles E. Burris, IV. The signature on the certified mail receipt card does seem *very* similar to the signature of defendant that appears on the bottom of the violation notice issued on May 30, 2007. The government, however, did not present any testimony (expert or otherwise) to compare the two signatures. In any event, the court is not persuaded beyond a reasonable doubt that the signatures are in fact identical. Nor did the government present any testimony explaining the difference between the Leavenworth addresses to which the bar letter was sent (1112

---

[10] Tenth Circuit Pattern Jury Instructions - Criminal 1.05 (citing *Tillman v. Cook*, 215 F.3d 1116, 1126 (10th Cir. 2000), and *United States v. Litchfield*, 959 F.2d 1514, 1520-21 (10th Cir. 1992)).

[11] *But see United States v. Boyd*, 214 F.3d 1052, 1054, 1058 (9th Cir. 2000) (affirming conviction where, although defendant may not have received or known about the letter, at least one guard informed her that she was barred, her husband received the bar letter, and she entered the base after the letter was sent). Regardless of *Boyd*, the government must show that defendant received the bar letter because the letter itself clearly states that the order for defendant not to re-enter Fort Leavenworth was effective upon his receipt of the letter. *See* Pl. Ex. 2.

Spruce) and defendant's address as shown on the violation notice (1905 Ottawa Street). Significantly, defendant never admitted at trial that he received the bar letter. There was, as mentioned before, some evidence defendant was surprised when informed he had been barred from the base. It reasonably follows from all the foregoing that the government has not proven beyond a reasonable doubt that defendant received the letter. Therefore, the commanding general's order not to re-enter was never effective, and defendant cannot be convicted of violating § 1382.

Despite the foregoing finding, the undersigned magistrate judge will proceed to analyze a significant legal issue argued by the parties, quite cognizant that what follows technically is dicta. But as a practical matter this issue is expected to crop up again during trial of several other pending Fort Leavenworth cases. The issue is whether one who was ordered not to re-enter the base violates § 1382 simply by crossing Fort Leavenworth's boundary line, or only after successfully getting past the manned check point.

As an analytical starting point, the court notes:

> It is well-recognized that a commander of a military installation has and must have the board authority and discretion to summarily exclude persons therefrom. Such authority is derived from the powers granted Congress and the Executive by Article I and II, respectively, of the Constitution, and is a natural concomitant of the commander's duty to maintain the order, security, and discipline necessary to military operations.[12]

Defendant correctly observes that *attempting* to re-enter a military base after receipt

---

[12] *United States v. Gourley*, 502 F.2d 785, 786-87 (10th Cir. 1973) (anti-war protest case) (citing *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886 (1961)).

of a bar letter is not a violation of any existing federal statute. From there, defendant argues that nobody in receipt of such a letter can be successfully prosecuted under § 1382 unless he actually succeeds in getting past the guards at the secured check point. Stated differently, defendant argues that, regardless of one's receipt of a bar letter, and regardless of one's intent to re-enter a military base, a person is essentially free from prosecution under the facts presented here so long as he is stopped on military property somewhere leading up to the check point. This is a creative and novel argument. But defendant's written submissions are notably bereft of citation to any directly supportive authority. And the court's research indicates that, despite some very limited public access to the roadways leading up to manned check points, other courts have upheld § 1382 prosecutions under facts strikingly similar to this case.[13]

In arguing the government has no authority to restrict defendant's use of the access road leading up to the check point at Hancock Gate, defendant relies heavily on *Flower v. United States*.[14] But defendant's reliance on *Flower* is plainly misplaced. That is, as recognized in more recent cases specifically dealing with access roads leading up to check points on secured military installations, *Flower* and its progeny are distinguishable, in that they deal with situations balancing First Amendment rights against property rights; stated

---

[13] *See, e.g.*, *United States v. Vasarajs*, 908 F.2d 443 (9th Cir. 1990) (defendant turned off public highway bisecting base, and onto military access road leading up to a secured gate); *United States v. McCoy*, 866 F.2d 826 (6th Cir. 1989) (holding that driveway at main gate of air force base constituted part of the military installation).

[14] 407 U.S. 197 (1972) (per curium).

differently, the more recent case make clear that *Flower* only stands for the proposition that, once the government opens up an area to the public for speech such that the space becomes a public forum, the government cannot bar entry to individuals who wish to enter for speech-related purposes.[15] The case at bar, of course, involves no First Amendment considerations.

Defendant also relies heavily on the undersigned magistrate judge's order in *United States v. Mohrmann*.[16] But here again this reliance is misplaced. *Mohrmann* is distinguishable because it involved the validity of 100% check point search procedures for Fourth Amendment purposes, and had nothing to do with the legal significance of the boundary line of the base for purposes of a trespassing prosecution.

The second paragraph of § 1382, which sets forth the elements of the offense with which Mr. Burris was charged, does not expressly refer to a defendant's state of mind, nor does it require an improper intent or motive.[17] Re-entering a military reservation therefore appears to be essentially a strict liability element of the offense.[18] An exception exists for

---

[15] *See, e.g.*, *Vasarajs*, 908 F.2d at 447 n.6.

[16] No. 03-7017, 2004 WL 1078138 (D. Kan. Apr. 9, 2004).

[17] *United States v. Albertini*, 472 U.S. 675, 682 (1985); *Holdridge*, 282 F.2d at 311.

[18] *See, e.g.*, *United States v. Zukowski*, 967 F. Supp. 269, 274 (S.D. Ohio 1997). *Cf. Vasarajs*, 908 F.2d at 448 n.7 (suggesting § 1382 likely imposes a general intent requirement, such that a defendant must reenter intentionally, rather than accidentally). As mentioned above, the facts in *Vasarajs* are analogous to those here. Vasarajs mistakenly thought the boundary was at the guard shack, instead of at the beginning of the road leading to the guard shack, but the Ninth Circuit held that defendant's intent to enter the base at the time she crossed the actual point of entry was sufficient to sustain a conviction. In the case at bar, when defendant entered Fort Leavenworth property and traveled on the road to the check point, he clearly was intending to enter the base. If § 1382 requires a defendant to re-

property legally titled to the United States as a military authority but which has been dedicated to a purely public purpose, such as a *public* highway only running through a base, and used only for that purpose.[19] But that situation clearly does not exist here, as defendant was stopped on the road between the base property line and the secured check point; the road leading up to the Hancock Gate was not dedicated for a purely public purpose, and defendant was not using it for one.

To satisfy the statute's requirement that the entry was on a military reservation, proof of the government's legal title or of a possessory interest is required.[20] If the government relies on its exercise of a possessory interest, "there must be some evidence that the defendant knew, or could have known, that such a possessory interest was being asserted."[21] This is usually shown through a marking or other activity on the property, such as a line, a rope, a sign, or some other type of notice.[22] Here, the government has proven it has legal title to the land on which defendant entered. The map of the base showing the boundary line establishes this and was stipulated to by defendant.[23] Although the government was not required to do so, it also has shown that a possessory interest was being asserted. Defendant

---

enter intentionally, defendant's intent to enter the base is sufficient.

[19] *Zukowski*, 967 F. Supp. at 274.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 274-75.

[23] Pl. Ex. 1.

passed through a large (albeit unmanned) gate and passed several signs, which gave him more than ample notice that the government was asserting a possessory interest in at least the land past the gate and signs and before the manned access point.

In consideration of the foregoing,

IT IS HEREBY ORDERED that the defendant, Miles E. Burris, IV, is found not guilty of violating 18 U.S. C. § 1382.  This case is dismissed.  The Clerk of the Court shall enter a judgment consistent with this order and Fed. R. Crim. P. 32(k)(1).

Dated this 7th day of November, 2007, at Kansas City, Kansas.

                                         s/ James P. O'Hara
                                        James P. O'Hara
                                        U.S. Magistrate Judge